**BATON ROUGE COAL & TOWING COMPANY**

v.

**FEDERAL BARGE LINES, INC. and The M/V AMERICA.**

**No. 634.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 9, 1964.

J. Y. Gilmore, Jr., Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for libelant.

Charles Kohlmeyer, Jr., Wayne S. Woody, Lemle & Kelleher, New Orleans, La., for respondent.

WEST, District Judge.

This libel, brought under the admiralty jurisdiction of this Court, results from the sinking of the M/V JOHN E. COON in the Mississippi River at the Port of Baton Rouge on March 29, 1962. The COON was owned by libelant, Baton Rouge Coal & Towing Company, who brings this libel alleging that the sinking of the COON resulted from the negligence of the M/V AMERICA, owned by respondent, Federal Barge Lines, Inc. The case was heard by this Court on April 13, 1964, after which it was taken under submission. Now, after due consideration of all of the testimony adduced during the trial, together with the arguments and briefs of counsel, this Court, for the following reasons, concludes that the sinking of the M/V JOHN E. COON was caused solely and entirely by the negligence of its captain and master, Jerry T. Pierce, and that there was no negligence on the part of the M/V AMERICA or its captain and crew which in any way contributed to this accident and the resulting loss of the COON.

The M/V JOHN E. COON, according to its master at the time of the accident, had a rounded bow, was about 60 feet long, 22 feet wide, and drew about 6 feet of water. She was powered by three GM 300 h.p. radial engines, pilothouse controlled, and was pushed by three screws. She was equipped with two pushing knees on her bow, and her crew consisted of a master or pilot, and two deckhands.

The M/V AMERICA is one of the two largest and most powerful towboats on the Mississippi River. She has about 9,000 h.p. driving four screws.

On the morning of March 29, 1962, the M/V AMERICA was upbound in the Mississippi River pushing a tow of 25 barges. These barges were made up in five fore-and-aft strings, secured together as a unit. The starboard string contained four barges; the next three strings to port contained five barges each, and the outside string on the port side contained six barges. The lead barge in the port string was the OR 927. The lead barge in the second string from the port side was the FBL 823, whose port bow was even with the starboard aft corner of the OR 927. Alongside, and directly to starboard of the FBL 823 was the ACBL 803, the lead barge in the center string, and to its starboard was the UBL 812, the lead barge of the second string in from the starboard side. The lead barge in the starboard string was the MV 623, whose forward port corner was even with the after starboard corner of the UBL 812. As thus made up, this tow was being pushed up river by the M/V AMERICA.

As the M/V AMERICA, with her tow, approached Baton Rouge, at about 6:00 a. m. on March 29, 1962, her captain, L. P. Smith, contacted the captain of the M/V JOHN E. COON, Jerry T. Pierce, by radio, and directed him to bring out, from the fleeting area, the barge OR 179, and place it in the M/V AMERICA'S tow, and to remove from the M/V AMERICA'S tow the UBL 812. Captain Smith apparently wanted the OR 179 placed at the head of the second string of barges in from the port side of the tow, directly on the starboard side of the OR 927. However, there was apparently a misunderstanding in the instructions given, and the COON brought the OR 179 out, on its starboard hip, and tied it up outboard on the port side of the OR 927. The COON, in performing this maneuver, apparently had some difficulty, and had to make two or three attempts before it finally landed the barge on the port side of the OR 927, which was the lead barge on the port string of barges. The AMERICA'S captain ordered the COON away, and decided to maneuver the OR 179 into its proper place by backing the AMERICA and its tow down and allowing the OR 179 to top over and around the bow of the OR 927 and thus let it fall into place on the starboard side of the OR 927 at the head of the second string of barges in from the port side. While the AMERICA was in the process of doing this, the COON proceeded to the head of the tow in an attempt to assist in placing the OR 179 where Captain Smith wanted it. However, Captain Smith ordered the COON away, claiming that its presence at the head of the tow was embarrassing his tow, and apparently preferring to man-handle the OR 179 into place rather than being assisted by the COON. This maneuver was finally completed and the OR 179 was secured in place on the starboard side of the OR 927.

After this maneuver had been completed, the COON proceeded around the stern of the AMERICA and up along the starboard side of her tow, preparatory to detaching the UBL 812 from the tow in accordance with previous instructions from the AMERICA. The barge UBL 812 was 195 feet long. Instead of coming alongside the UBL 812 and taking it on the port hip of the COON and detaching it from the tow, the captain of the COON elected to attempt to face up to the barge in a downstream landing. In an effort to do this, the COON proceeded upstream ahead of the barge, and then came about and headed downstream toward the barge. His first attempt at this downstream landing was unsuccessful, with the COON shearing off of the barge and heading back upstream to attempt another landing. The second attempt to face up to the barge was likewise unsuccessful, and the COON again sheared off and proceeded back upstream in its third attempt to make a downstream landing on the barge. On this third attempt, according to the testimony of the captain of the COON, when he

was about 200 feet from the barge, he reversed his engines in order to kill his headway. He testified that he touched the bow of the UBL 812 in what he termed a perfect landing, and immediately put all three engines full ahead. But just as he put all three engines ahead, the stern of the COON began topping to port. He said he immediately put his rudder full to port, but the stern of the COON continued topping to port, and in about 15 or 20 seconds, the COON was completely crosswise of the bow of the barge UBL 812, and immediately commenced taking on water. At this point he put all engines full astern, but could not back away. He realized the COON was about to go under the bow of the barge, so he then jumped from the COON onto the barge UBL 812. The COON immediately capsized on its starboard side and sank within a matter of seconds.

The captain of the COON, Jerry T. Pierce, was 26 years of age and testified that he had been a master or captain on the River for approximately two years. He holds no certificates from the Coast Guard, but has handled barges and tows on the Intracoastal Canal for about six years. He testified that he had pushed tows up to 1,000 feet long on the River, but there is no evidence in the record that he had ever before attempted a downstream landing maneuver such as was attempted in this case.

Captain Pierce testified that while he was attempting to make his landing on the barge UBL 812 the AMERICA was slowly moving up river. He testified that at one time he contacted the AMERICA by radio and instructed her to stop her forward movement, and that she replied that she was stopped. However, he then testified that as he was attempting each of his three landings, he continued to try to contact the AMERICA by radio to request her to stop her forward movement, but that the AMERICA did not answer. He insists that the AMERICA was still moving forward at one to two miles per hour over the ground, against a four or five mile current, even up to

and at the time, on his third attempt, he landed on the head of the barge. All the time that he was attempting these landings, he says he knew that the AMERICA and her tow were moving forward over the ground, against the current, and that in spite of this fact, he continued to attempt to make a downstream landing on the head of the barge. It is his testimony that it was the forward movement of the tow, rather than the current, that pulled the COON under the bow of the barge and caused her to capsize and sink.

As opposed to the testimony of Captain Pierce, there is substantial testimony in the record, and what this Court considers to be a preponderance of the testimony, to indicate quite clearly that as the COON attempted its third downstream landing, it approached the head of the UBL 812 at about a five degree angle. As it made contact with the barge at this angle, the entire boat, which was in a four or five mile current, immediately acted as a rudder. The current then caused the COON to top around to port, thus causing it to swing broadside to the head of the barge. The evidence in this case more than preponderates in favor of the fact that at a time when the River is at a high stage, in this instance, approximately 36 feet, and when there is a four to six mile per hour current running, that it is extremely unwise to attempt a downstream landing such as was done in this instance. The testimony is convincing that the sound and sensible procedure would have been for the COON to have proceeded upstream on the starboard side of the tow and to take the barge on its port hip and thus detach it from the tow. In such a maneuver the COON would have been much more maneuverable in that it would have been proceeding against the current rather than with the current as in a downstream landing where the boat is deprived of most of its steerage power. But even if the circumstances made a downstream landing imperative, all of the testimony shows without question that such a landing should never

be attempted if the tow is making headway against the current. As a matter of fact, the preponderance of the testimony indicates that in order for such a landing to be made, the tow to which the barge is to be added or from which it is to be detached should be drifting with the current at the time the landing is made. All of the experts who testified stated unequivocally that they would never, under any circumstances, attempt a downstream landing if they thought or knew that the tow on which the landing was attempted was moving against the current. They all testified that in such an instance they would refuse to land on the tow not only until the headway had been checked, but until the barge was drifting with the current. In this instance, even assuming that the AMERICA was making headway against the current when the COON attempted her three landings, then, under such conditions, it was the grossest kind of negligence for the captain of the COON to attempt to face up to the barge in a downstream landing. He testified over and over again that the AMERICA was moving and that he had been unable to get her to stop her forward movement. If this was the case, his own testimony convicts him of the grossest kind of negligence in subjecting his boat to the disaster that befell her by attempting such a landing under conditions known to him to be adverse to such a procedure.

The evidence is conflicting on the question of whether or not the AMERICA and her tow were actually making headway against the current, or whether she was dead over the ground at the time of the attempted landings. But in any event, the evidence is quite clear that she was not drifting with the current at that time. But even if we should hold that she was dead over the ground, and was not making headway against the current, it must still be concluded that the captain of the COON was guilty of negligence. This Court is convinced that his attempted landing on the head of the barge was made at an angle, thus placing his vessel in an untenable position against the current that was running at the time. There were no instructions from the AMERICA to the COON as to the method by which the barge would be detached from the tow. Consequently, Captain Pierce, as master of the COON, had sole discretion as to the handling of his vessel and the manner by which he would detach this barge. If he did not believe that the AMERICA was cooperating with him in this maneuver, he was, of course, under no obligation to endanger his vessel, and he was certainly under no obligation to attempt to detach this barge unless conditions were such that he could do so with safety to himself, his crew and his vessel. The entire transaction involving the placing of the OR 179 into the tow and the attempt to detach the UBL 812 from the tow convinces this Court that Captain Pierce was inexperienced and incapable of performing the maneuvers attempted.

There is no evidence in this record to sustain a holding by this Court that the AMERICA was guilty of any negligence causing or contributing to the cause of this accident. She exercised no control over the JOHN E. COON, and had not instructed the COON as to any particular method to be used in detaching the UBL 812 from the tow. The method used and the maneuver attempted was entirely the idea of and within the discretion of Captain Pierce of the COON. He was negligently unsuccessful in his attempt to carry out his mission and was solely responsible for the disaster which befell the M/V JOHN E. COON. Accordingly, there will be a decree issued herein in favor of respondents, and against libelant, dismissing libelant's suit at its cost.